**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
RAED JARRAR,

                Plaintiff,

        - against -

GARFIELD HARRIS, et al.,

                Defendants.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 07-3299 (CBA) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

      The defendants in this civil rights lawsuit, invoking Federal Rule of Civil Procedure 35, seek to compel a plaintiff who claims to have suffered only "garden variety" emotional distress to submit against his will to an examination by a forensic psychiatrist of the defendants' choosing. They purport to justify this request by arguing that an opinion from their "renowned" psychiatric expert is critical in allowing the trial jury to determine whether the plaintiff really was scared, embarrassed, humiliated, and upset at the time of the events in issue; whether he continues to experience such emotions; and whether those emotions were caused by the events he describes. Such intrusive discovery – a forced psychiatric examination to explore allegations that a plaintiff has experienced universally familiar emotions – is generally not available in comparable cases where a plaintiff claims to have been subjected to illegal discrimination and other civil rights violations by an employer. Nevertheless, the defendants assert that the latter common-sense rule does not (and should not) apply in a case where the plaintiff claims to have been subjected to illegal discrimination and other civil rights violations by a government official or other non-employer. I disagree, and therefore deny the motion to compel.

I.      Background

Plaintiff Raed Jarrar ("Jarrar") has filed an action against defendants Garfield Harris, Franco Trotta, and Jetblue Airways Corp. seeking (in addition to certain declaratory and injunctive relief) monetary damages for emotional distress that he claims to have suffered by virtue of the defendants' alleged violation of his civil rights.  In describing his emotional injury, Jarrar does not allege that he suffered any severe psychological harm or even that he sought treatment from a psychologist or psychiatrist for such harm as he did suffer; he claims no more than that he experienced emotions to which all human beings are subject at some point in their lives.  Specifically, as summarized by the defendants (albeit with additional cumulative examples), he claims to have been "scared," "shocked," "terrified," "embarrassed, ashamed, humiliated and upset" as a result of the defendants' alleged misconduct at the time it occurred, and that he "continues to feel uncomfortable ... afraid ... [and] worried."  Docket Entry ("DE") 29 (quoting DE 20 (Amended Complaint ("Complaint"))  ¶¶ 23, 26, 37, 44, 51).[1]

---

[1] In scouring the Complaint for words connoting emotional distress that might support their insistence on the need for expert psychiatric opinion, the defendants take unwarranted liberties with its text.  For example, the defendants render Paragraph 51 in a way that suggests that Jarrar has alleged that he *generally* "continues to feel uncomfortable ... afraid ... [and] worried."  In fact, the pertinent portion of the Complaint is far more modest and specific:  describing the aftermath of an event in which he complains of having been treated improperly for wearing a shirt bearing an inscription in Arabic, Jarrar alleges that he "continues to feel uncomfortable *reading Arabic script and wearing clothing with Arabic script in public places* because he is afraid *that he will again be subjected to discriminatory and unconstitutional treatment*" and that "*every time [he] has boarded a plane* since [the incident at issue in this case], he has worried *about being subjected to discrimination and harassment*.  Complaint ¶ 51 (emphasis added).  The allegation is not that Jarrar lives in a state of constant fear and worry, as the defendants' description might convey to the unwary reader, but rather that he experiences fears and worries when doing specific things in specific circumstances, and that in particular he fears that the defendants (or others in similar positions) will subject him to further improper treatment.  In the context of the instant dispute, the defendants' rendering of the allegation in Paragraph 51 bolsters a meritless motion only by unfairly distorting the plaintiff's words.

The defendants contend that by making such allegations, Jarrar has placed his mental condition in controversy, and that there is accordingly good cause for the examination they seek to compel. *See* DE 29 (letter motion); DE 30 (supplemental letter in support). Jarrar contests both of those assertions; in particular, he argues that his allegations of run-of-the-mill emotional distress do not place his mental state in controversy within the meaning of Rule 35, and therefore that an independent medical examination ("IME") by a psychiatrist is inappropriate. DE 31.

At the heart of the parties' dispute is the issue of whether a particular line of case law – one that draws a distinction, for purposes of determining whether a parties' mental state is "in controversy," between "garden variety" emotional distress claims and those of a more severe nature – applies beyond the context of employment discrimination cases, and specifically to this constitutional tort case. *See Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D.Cal. 1995); *Fox v. Gates Corp.*, 179 F.R.D. 303 (D. Colo. 1998). I invited the parties to brief that issue; specifically, I asked for their views on the extent to which the instant discovery matter was similar to or differs from, factually or legally, a similar issue that I resolved in an earlier employment discrimination case. *See Brown v. Mineta*, docket no. 03-CV-2594 (DRH), DE 23 (Memorandum and Order denying motion to compel psychiatric examination) (E.D.N.Y. Dec. 27, 2004). In *Brown*, I denied the government's Rule 35 motion where the plaintiff claimed that the defendant's conduct caused her to suffer "embarrassment and humiliation" for which she never sought treatment and would seek to prove at trial solely through her own testimony. For the reader's convenience, I reproduce below the relevant portion of my analysis in that case:

> The prospect of defending against such subjective proof does not make it necessary or appropriate for an opposing party to delve into the plaintiff's psychiatric history or conduct an independent mental examination. The

3

> government has deposed the plaintiff and can plainly cross-examine her at trial if and when she testifies to her claimed embarrassment and humiliation. I do not believe the government needs the further discovery it seeks in order to combat such testimony. Indeed, with respect to the request for an expert examination, I doubt that the matter meets the threshold of being reasonably likely to lead to the discovery of admissible evidence: embarrassment and humiliation are human emotions with which every human is familiar, and need no explication by an expert. A party seeking to have a mental health professional opine as to whether an opposing party truly felt embarrassed or humiliated or as to what it means to experience such emotions would be hard pressed to explain why such testimony was beyond the ken of a lay jury.

*Id*. at 5. I later denied the government's motion for reconsideration of that order, and the assigned district judge overruled the government's objections to both of the rulings against it. *Brown*, DE 40 (E.D.N.Y. Mar. 22, 2005) (denying government's motion for reconsideration); *see also Brown*, DE 62 (E.D.N.Y. Oct. 14, 2005) (Hurley, J.) (agreeing that denying of the government's motions was consistent with the "majority view" under relevant case law).

In response to my request for further briefing discussing the applicability of my decision in *Brown*, the defendants filed a supplemental letter arguing that my reasoning in that case – and the legal authority on which I relied – should apply exclusively in the employment discrimination context; at a minimum, they argued, it should not apply in constitutional tort cases like this one. *See* DE 30 at 1-2. According to the defendants, a plaintiff in a constitutional tort case who asserts that the alleged tort resulted in mental distress necessarily places her mental condition in controversy and must submit to an IME. *Id*. at 2.[2] The defendants further argue that an IME is

---

[2] The government cites the following cases in support of that proposition: *Bender v. Delvalle*, 2007 WL 528694 (S.D.N.Y. Feb. 20, 2007); *Martin v. Salvatierra*, 2006 WL 897633 (S.D. Fla. Mar. 30, 2007); *Doe v. District of Columbia*, 229 F.R.D. 24, 26 (D.D.C. 2005); *Eckman v. University of Rhode Island*, 160 F.R.D. 431, 433-34 (D.R.I. 1995); *Brandenberg v. El Al Airlines*, 79 F.R.D. 543, 546 (S.D.N.Y. 1978); *Hodges v. Keane*, 145 F.R.D. 332, 334-335 (S.D.N.Y. 1993); and *Vilkhu v. City of New York*, docket no. 06-CV-2095 (CPS), DE 104 (E.D.N.Y. Sept. 13, 2007).

"particularly critical" here because Jarrar must establish that he suffered an actual injury in order to recover on his compensatory damages claim, and that if his only evidence in that regard is his own testimony the defendants should in fairness be permitted to challenge it through expert opinion. *See* DE 29 at 3; DE 30 at 3-4.

Jarrar responded the same day, arguing essentially that the defendants have overreached. He contends that the cases cited by the government do not support the broad proposition that all plaintiffs in constitutional tort cases who allege mental distress must submit to an IME; rather, the plaintiffs in those cases were required to do so because they undoubtedly placed their mental condition in controversy within the meaning of Rule 35. *See* DE 31 at 2. As discussed below, I agree with Jarrar.

II.  Analysis

  A.  Applicable Law

Pursuant to Federal Rule of Civil Procedure 35:

> The court where the action is pending may order a party whose mental or physical condition ... is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner... [The order] may be made only on motion for good cause.

Fed. R. Civ. P. 35(a)(1)-(2)(A). Rule 35 requires "discriminating application" by the trial judge. *Schlagenhauf v. Holder*, 379 U.S. 104, 117-18 (1964). While the movant need not prove its case on the merits, a movant can neither meet his burden to demonstrate that an adversary's "mental ... condition ... is in controversy" nor satisfy the "good cause" requirement "by mere conclusory allegations of the pleadings [or] by mere relevance to the case..." *Id.* Rather, the movant must make "an affirmative showing ... that each condition as to which the examination is sought is

really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* What constitutes "good cause" depends on the circumstances of the case, including the movant's ability to obtain the information it seeks by other means. *Id.*

Courts adjudicating Rule 35 motions have often turned to the persuasive analysis set forth in *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D.Cal. 1995). In that case, the plaintiff alleged wrongful termination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, and sought, among other forms of relief, compensatory damages for losses resulting from "humiliation, mental anguish, and emotional distress." *Id.* at 89. The defendants sought to compel the plaintiff to submit to an IME pursuant to Rule 35. After canvassing a variety of case law construing Rule 35, the court concluded that the plaintiff's "garden variety" claims for emotional distress did not suffice to place her mental condition in controversy, and therefore that an IME was not warranted. *Id.* at 97-98. In particular, the court noted the absence of the following factors ordinarily present when a court requires a plaintiff to submit to an IME:

> The[ ] cases suggest that courts will order plaintiffs to undergo mental examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following: 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

*Id*. at 95. The court further noted that if it adopted the defendant's position, "mental examinations could be ordered whenever a plaintiff claimed emotional distress or mental anguish... [and] Rule 35(a) was not meant to be applied in so broad a fashion." *Id.* at 97 & n.4.

*Turner* – and in particular the distinction it drew between "garden variety" emotional distress claims and more severe claims – appears to have been applied primarily, but by no means exclusively, in employment discrimination cases. Of particular relevance to the instant dispute, several courts have applied the *Turner* analysis to civil rights actions brought under 42 U.S.C. § 1983. *See, e.g., Bonner v. Normandy Park*, Slip Copy, 2008 WL 624942 (W.D. Wash. Feb. 12, 2008); *Puckett v. Dyer*, Slip Copy, 2007 WL 2326059 (E.D. Cal. Aug. 14, 2007); *Norman v. City of Lorain, Ohio*, Slip Copy, 2006 WL 5249724 (N.D. Ohio Nov. 16, 2006); *Torres v. Kings County*, Slip Copy, 2007 WL 1725481 (E.D. Cal. June 14, 2007); *O'Sullivan v. State of Minn.*, 176 F.R.D. 325 (D. Minn. 1997) (involving both a gender discrimination claim and a § 1983 claim for retaliation); *Pearson v. City of Austin*, 2001 WL 681663 (W.D. Tex. Apr. 4, 2001). Courts have applied it in other contexts as well. *See, e.g., Von Bargen v. U.S.*, Slip Copy, 2007 WL 3037555 (N.D. Cal. Oct. 17, 2007) (negligence action); *Smith v. J.I. Case Corp.*, 163 F.R.D. 229 (E.D. Pa. 1995) (products liability action).

  B.  <u>Jarrar's Mental Condition Is Not In Controversy For Purposes Of Rule 35</u>

As a threshold matter, I am not at all persuaded that the common-sense distinction drawn in *Turner* between "garden variety" mental distress claims and more severe claims is inapplicable to the instant dispute. The government has provided no direct authority for that assertion, and as noted above, several courts have applied the distinction in civil rights cases brought under section 1983. Although none of the latter cases was litigated in this district, two pre-*Turner* cases from the Southern District of New York undermine the government's attempt to cabin the applicability of *Turner*'s rationale.

In one such case, the court acknowledged that "[e]ven in non-sexual discrimination cases, there is considerable dissention among the courts as to whether a plaintiff puts his or her mental condition in controversy by alleging emotional distress." *Bridges v. Eastman Kodak Co.*, 850 F. Supp. 216, 222 (S.D.N.Y. 1994) (citing cases involving claims of racial discrimination, tort, and violations of § 1983). The court went on to note that while it could discern "no hard and fast rule that can explain these different results, most cases where mental examinations have been allowed have either involved a separate tort claim for emotional distress ... or an allegation of ongoing severe mental injury." *Id*. In the second case, in which the plaintiff sued under § 1983, the court denied the defendant's Rule 35 motion because the plaintiff had alleged only past mental injury. *Hodges v. Keane*, 145 F.R.D. 332, 334 (S.D.N.Y. 1993) (citing *Sabree v. United Broth. of Carpenters & Joiners*, 126 F.R.D. 422, 424 (D. Mass. 1989) (holding that mental health is not placed in issue by "garden-variety claims of emotional distress"). Moreover, courts in this circuit have applied the distinction between "garden variety" mental distress claims and those of a more serious nature to a variety of disputes – other than applications for relief under Rule 35 – outside the context of employment discrimination claims. *See*, *e.g.*, *Jessamy v. Ehren*, 153 F. Supp. 2d 398, 401-02 (S.D.N.Y. 2001) (noting that courts apply the distinction to the question of whether a jury award of compensatory damages is excessive; and to the question of whether or not the psychotherapist-patient privilege is waived by plaintiff's assertion of an emotional distress claim).

I agree with Jarrar that the case law on which the government purports to rely is inapposite. In the respective circumstances of those cases, I believe the outcome in each would have been the same even if the court had applied the rationale of *Turner*. *See Bender*, 2007 WL 528694, at *1 (plaintiff alleged injuries including "post traumatic stress, and personality

8

changes"); *Martin*, 2006 WL 897633, at *1 (plaintiff did not contest that her mental condition was in controversy); *Doe*, 229 F.R.D. at 26 (plaintiff had already received psychiatric treatment for the emotional suffering alleged in the complaint); *Eckman*, 160 F.R.D. at 433-34 (plaintiff conceded that her mental condition was in controversy and intended to prove her mental injury through the testimony of two therapists); *Brandenberg v. El Al Airlines*, 79 F.R.D. at 546 (plaintiff did not contest an IME); *Hodges v. Keane*, 145 F.R.D. at 334-335 (court found that plaintiff's mental condition was in controversy based on evidence that his allegations were themselves a by-product of his own paranoid-schizophrenia).

Finally, I agree with Jarrar in concluding that what the defendants propose is a virtually automatic rule that would require plaintiffs in a certain category of cases (here constitutional tort) to submit to an IME upon pleading any sort of mental distress or physical injury. The Supreme Court has long-since rejected such an onerous rule. *See Schlagenhauf*, 379 U.S. at 121 ("sweeping examinations of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered merely because ... a general charge of negligence is lodged").

Applying the *Turner* analysis here leads to the same common-sense conclusion as it did in *Brown*: forcing the plaintiff to submit to an IME against his will is both unnecessary and inappropriate. Jarrar has not brought a separate claim for intentional or negligent infliction of emotional distress; he does not allege any specific mental or psychiatric disorder, or unusually severe emotional distress; he has not disclosed an expert; and he certainly does not concede that his mental condition is in issue. *See Turner*, 161 F.R.D. at 95. Lay jurors are entirely competent to evaluate Jarrar's allegations that he was scared, embarrassed, shamed, and humiliated as a

9

result of the defendants' alleged misconduct, and that he continues to feel similar emotions in certain situations to this day. The defendants are equally competent to meet such testimony without an expert.

The defendants do not claim otherwise. Instead, they argue that they need their expert to address matters beyond the ken of a lay jury, such as whether a person of Iraqi upbringing could plausibly have suffered garden variety emotional distress from the mere nuisance of potentially unconstitutional discrimination. *See* DE 30 at 4. The most charitable description I can provide of the latter argument, which appears to make a class of plaintiffs subject to more intrusive discovery than others merely on the basis of national origin, is that it fails to persuade me that there is good cause for the relief the defendants seek.

      C.      <u>Jarrar Need Not Offer Expert Testimony To Prevail On His Claims</u>

The defendants further argue that Jarrar should be required to submit to an IME because in order to recover on his compensatory damages claim he must prove actual injury. They contend that the only evidence of injury that Jarrar has proffered to date is his own say-so. On that basis the defendants argue they should be permitted to challenge Jarrar's testimony with expert opinion. *See* DE 30 at 3-4. I have no quarrel with the two premises of the defendants' argument, but their conclusion is a *non sequitur*.

The defendants correctly state that "the question whether Jarrar is entitled to actual compensatory damages or ... nominal damages turns entirely on whether he can demonstrate actual injury to his person." DE 30 at 3; *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (reasoning that the basic purpose of § 1983 damages is to compensate a person for actual provable injuries that are caused by the deprivation of constitutional rights) (citing

*Carey v. Piphus*, 435 U.S. 247, 254 (1978)). But regardless of the requirements for securing compensatory rather than nominal damages, Jarrar need not meet the same standard to prevail on his claims and secure relief. As the defendants acknowledge, Jarrar can at a minimum recover nominal damages if he establishes the defendants' substantive liability. *Memphis Community School Dist.*, 477 U.S. at 308; *Carey*, 435 U.S. at 266-67 & n.24.[3]

To support an award for compensatory (rather than merely nominal) damages, Jarrar would likely, though not necessarily, need to corroborate his testimony with additional evidence. *See Patrolmen's Benevolent Ass'n. of City of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002) (a plaintiff's subjective testimony alone is generally insufficient to sustain an award of emotional distress damages); *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1253-57 (4th Cir. 1996) (finding that plaintiffs' testimony was insufficient to support an award of compensatory damages for emotional distress, but explicitly holding that, in appropriate cases, "a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation"). Such corroboration need not come from an expert, nor must it, to be sufficient, do anything more than the existing record does to place Jarrar's mental condition in controversy. *See Minor v. City of Glen Falls, et al.*, 999 F.2d 655, 662-63 (2d Cir. 1993) (plaintiff's testimony along with that of his wife sufficient to support district court's award

---

[3] Further, although the defendants conveniently ignore this fact, Jarrar may also be able to recover reasonable attorneys' fees and litigation costs if he prevails on liability, even if he secures no more than nominal damages. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (holding "that a plaintiff who wins nominal damages is a prevailing party under § 1988."), *see also Arbor Hill Concern Citizens Neighborhood Ass'n v. County of Albany and Albany County Board of Elections*, 522 F.3d 182, 184 n.2 (2nd Cir. 2008) ("The reasonableness of a fee award does not depend on whether the attorney works at a private law firm or a public interest organization[.]").

of $12,000 for emotional injury on § 1983 claim; evidence of medical attention is neither required nor necessarily probative).

In short, Jarrar may be able to successfully litigate his claims without adducing expert testimony in his case-in-chief. As a result, there is no need to let the defendants compel a preemptive forensic psychiatric examination on the theory that they will inevitably need expert testimony of their own to meet Jarrar's proof.

III. Conclusion

For the reasons discussed above, I deny the government's motion pursuant to Federal Rule of Civil Procedure 35 to compel plaintiff Raed Jarrar to submit to an independent medical examination by a forensic psychiatrist.

**SO ORDERED.**

Dated: Brooklyn, New York
July 25, 2008

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge